UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 7:08-CV-88-KKC

JAMES HOLLMAN BROWNING                                            PLAINTIFF

v.                    **MEMORANDUM OPINION AND ORDER**

L.T. PENNERTON, ET AL.                                            DEFENDANTS


Currently before the Court for consideration are the following pleadings:

(1)     The "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment "

[Record No. 34] ( the "Motion to Dismiss/ Summary Judgment"), filed by counsel for various

federal defendants, all of whom were, at the time relevant to this action, officials at the United

States Penitentiary-Big Sandy ("USP-Big Sandy")[1];

(2)     *Pro se* plaintiff James Hollman Browning's "Response"[Record Nos. 38 and 39]

to the defendants' "Motion to Dismiss/Summary Judgment;"[2]

(3)     The "Motion of Objection to Appeal to District Judge" [Record No. 41 ] filed by

Plaintiff Browning;

(4)     The defendants' "Response" [Record No. 43]  to the "Plaintiff's Request for the

B-3 Officer"

(5)     The "Motion to File Amended Complaint and Add James Meade as Defendant"

---

[1] The named defendants are" (1) L.T. Pennerton; (2) Tim Fazenbaker; (3) Myron L. Batts; (4) Suzanne R. Hastings; (5) "B." Gourdouze and (6) "Mr. Edwards," whom the plaintiff identifies as the officer of B-3 Dorm  The Court take judicial notice of the fact that Suzanne Hastings was the former warden of USP-Big Sandy.  The current warden is J.C. Zuercher.

[2] Docket Entries No. 38 and 39 are duplicates. While Browning labeled his submission as a "motion" seeking various forms of relief, the Clerk properly docketed the filing as a "Response" to the government's Motion to Dismiss" and as a Reply to a discovery matter.

filed by Plaintiff James Hollman Browning [Record No. 44].

INTRODUCTION

Plaintiff Browning claims that various federal prison official-defendants violated the Eighth Amendment of the United States by deliberately failing to heed his warning that another inmate was going to harm him. That inmate subsequently attacked Browning, who asserted an Eighth Amendment claim for alleged inadequate medical treatment for his injuries.

For the reasons set forth herein, the Court will **deny** the defendants' "Motion to Dismiss" on the Eighth Amendment issue of "failure to protect"as to Defendants Myron Batts, Timothy Fazenbaker, Benjamin Pennington and Officer Edwards. The Court will **grant** the "Motion to Dismiss" regarding the Eighth Amendment medical claims asserted against Defendants Myron Batts, Timothy Fazenbaker, Benjamin Pennington and Officer Edwards.

The Court will **grant** the "Motion to Dismiss" with respect to both of the Eighth Amendment "failure-to protect" and medical claims asserted against Defendants Suzanne Hastings and Bobby Gourdoze. The Court will **deny** the various motions filed by Browning, although his "Motion to File Amended Complaint" will be denied without prejudice to Browning renewing the motion and tendering an Amended Complaint.

PROCEDURAL HISTORY<br>1. The Complaint [Record No. 2]

Browning is currently confined in the United States Penitentiary located in Tucson, Arizona. On May 2, 2008, Browning filed this civil rights complaint, asserting claims under: (1) 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and (2) the Federal Tort Claims Act ("FTCA"), Title

2

28 U.S.C. §§1346(b), 2671-2680.  The events about which the plaintiff complains occurred on December 11, 2006, while he was confined in USP-Big Sandy, located in Inez, Kentucky

Browning alleged that on that date, he was physically attacked by another inmate at USP-Big Sandy, whom the Court will refer to as "the Assailant Inmate."  Browning alleged that the Assailant Inmate inflicted two puncture wounds that were so deep they reached into his lungs and barely missed hitting his spinal cord [*See* Record No. 7, p. 5].

Browning alleged that the day prior to the assault by the Assailant Inmate, he warned USP-Big Sandy Staff prison staff (specifically, Defendants Fazenbaker and Batts) that the Assailant Inmate  presented a dangerous threat to his (Browning's) safety [*Id*., p. 7]. He alleged that on December 10, 2006, he specifically asked Batts and Fazenbaker not to place the Assailant Inmate in his cell because he had a history of perpetrating violent acts on other inmates [*Id*].

Browning alleged that on the following day, December 11, 2006, he asked Defendant Edwards to lock him (Browning) in an activity room and count him there, instead of sending him to the cell with the Assailant Inmate.[3] Browning claimed that the Assailant Inmate specifically threatened to injure him and that he had conveyed that threat to three of the named defendants [*Id*]. Browning alleged that on that date, the defendants failed to take proper action to remove him (Browning) from a known and protect him from an avoidable risk of physical injury.

Browning alleged that on December 11, 2006, during the "Mainline" lunch meal at the

---

[3] Browning alleges that before he was attacked on December 11, 2006 he told B-3 Dorm Officer Edwards that the Assailant Inmate had threatened him. Browning alleged that he specifically  told Officer Edwards that he needed to be separated from the Assailant Inmate and that he should be placed in the Activities Room. Browning claims that at that time, he observed  Edwards place a  phone call to Defendant Pennington and receive a phone call from Defendant Pennington  to inquire as to what should be done.

prison, he also advised Defendant Batts that he needed separation from the Assailant Inmate. Browning further alleged that on that date, he warned Defendants Batts and Fazenbaker that the Assailant Inmate was violent, had threatened him, and should have remained in the SHU. Browning claims that none of the defendants separated him from the Assailant Inmate.

Finally, Browning alleged that after his assault, USP-Big Sandy staff failed to adequately investigate alleged wrong-doing by staff members who had not protected him. He claims that he has made repeated attempts to lodge complaints and initiate inquiries about the prison staff's failure to protect him from foreseeable injury at the hands of the Assailant Inmate.

In his Complaint, Browning asserted *Bivens* claims based on the defendants' alleged deliberate disregard of his safety in violation of the Eighth Amendment of the United States Constitution. He also asserted a claim of negligent supervision under the FTCA and requested the appointment of counsel.

### 2. Orders Entered in October of 2008
#### A. Memorandum Opinion and Order of October 8, 2008 [Record No. 10].

On October 8, 2008, the Court issued a Memorandum, Opinion and Order ("the October 8, 2008 Order"), in which it: (1) denied Browning's "Motion for Appointment of Counsel"; (2) dismissed Browning's FTCA claims without prejudice; (3) dismissed Browning *official* capacity Eighth Amendment claims against five of the named defendants, and (4) directed the Clerk of the Court to issue summonses for Defendants Pennington, Fazenbaker, Batts, Hastings, and Gourdoze, in their individual capacities [*See* Record No. 10].[4]

---

[4] The Court dismissed the official capacity *Bivens* claims, explaining that such claims can only be properly asserted against individual federal employees in their *individual* capacities. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) [*Id.*, p.4]. The Court dismissed the FTCA claims, finding that Browning had not named the United

B. Memorandum Opinion and Order of October 24, 2008 [Record No. 10].

Browning sought reconsideration of the October 8, 2008 Order. On October 24, 2008, the Court issued a Memorandum, Opinion and Order ("the October 24, 2008 Order") [Record No. 15], amending the October 8, 3008 Order to reflect that "Mr. Edwards" was the sixth defendant named in this action [*Id*.,p.3]. The Court directed the Clerk to issue a summons for Edwards, in his individual capacity, and directed the U.S. Marshal's office to serve him [*Id*., pp. 3-4].[5]

The Court refused to reconsider the denial of appointment of counsel issue, again explaining that appointment of counsel in this *pro se* civil rights action was not warranted by either the law or the particular facts of the case [*Id*., p.3]. The Court determined that allowing "additional time" in which to pursue official capacity *Bivens* claims against the defendants was not warranted, noting that under well established law, such claims could not succeed.

3. Browning's Requests for Video-Tape

Browning asked the Court to compel the defendants to provide the prison's video-tapes from December 11, 2006 [*See* Motion, Record No. 33]. The Court referred the discovery issue to Magistrate Judge Robert E. Wier [*See* Order, Record No. 35].

The defendants objected, arguing that the requested video-tape was irrelevant because there was no dispute that Browning was assaulted on December 11, 2006, only whether (or how

_____

States as a defendant to this action [*Id*., p.5].

[5] In the October 24, 2008 Order, the Court concluded that amendment of October 8, 2008 "Payment Order" [Record No. 9] was required and at that time, reduced the amount of the "initial partial filing fee." [*See* Record No. 15, p. 4].

adequately) Browning told prison staff prior to the incident that he was afraid of the Assailant Inmate, [Record No. 37]. The defendants argued that even if the video-tape existed, it would not have recorded Browning's alleged verbal statements warnings to the defendants.

Special Investigative Agent James Link stated in a sworn Declaration that by early 2009, the prison no longer retained the video footage at issue in its digital archives and recycled space. According to Link, the footage had been removed in the normal course of business after the SIA completed the investigation of the December 11, 2006, assault. The tape was destroyed long before Browning filed this action in May of 2008 or requested the video tape in early 2009 [*See* Link Declaration, Record No. 37-1].

On March 6, 2009 Magistrate Judge Wier denied Browning's motion to compel release of the video-tapes [*See* Order, Record No. 40]. The denial was based primarily upon the fact that the prison no longer had the video-tapes in its possession.

### 4. The Defendants' "Motion to Dismiss" [Record No. 34]

The defendants do not dispute that the Assailant Inmate attacked Browning on December 11, 2006. The defendants assert four reasons why they are not liable to the plaintiff for the assault. Each ground is set forth below.[6]

### A. Statute of Limitations

The defendants argue that Browning's Eighth Amendment claims are barred by the applicable statute of limitations. Further discussion of this defense is not necessary. Browning's documents reveal that he did, in fact, file this *Bivens* action in a timely manner.

---

[6] The defendants mistakenly identified its third argument, pertaining to defense of qualified immunity, as Argument "IV." [*See* Record No. 34-2, p.8]. That argument was, in fact, only the government's third argument.

B.  Deficient Eighth Amendments Claim

The defendants argue that Browning has failed to state a either valid Eighth Amendment "failure-to-protect" claim or a valid Eighth Amendment medical claim.  Five of the defendants filed sworn Declarations outlining their versions of the relevant events.

Summary of Declarations

Defendants Fazenbaker, Batts, Hastings, Gourdoze, and Pennington state that if Browning or another prison employee had told them that Browning was afraid of the Assailant Inmate, they would have taken immediate steps either to further investigate the complaint, and/or, in warranted, to officially protect Browning and separate the two inmates [*See* Fazenbaker Decl., Record No. 34-3; Hastings Decl., Record No. 34-5; Batts Decl., Record No. 34-7; Gourdoze Decl., Record No. 34-9; and Pennington Decl., Record No. 34-16].

They dispute Browning's allegation that on or before December 11, 2006, he had requested protection, or "separation," from the Assailant Inmate. The defendants disclaim direct involvement in the Assailant Inmate's release from SHU prior to the attack on Browning.  They all further disclaim involvement in the process providing of medical treatment to Browning in connection with for injuries he sustained in the attack by the Assailant Inmate.

Defendants Batts and Fazenbaker state that while they may have encountered Browning at some point on December 10-11, 2006, such as during meal time, they had no recall of Browning telling them that he was in fear of his safety because of the Assailant Inmate. Defendant Penning states that he cannot recall if Officer Edwards called him twice on December 11, 2006 to convey Browning's concerns about his personal safety.

7

Defendants Gourdoze and Hastings state that they had no direct conversations with the plaintiff about his alleged safety concerns. All claims asserted against them arose from their supervisory positions. Defendants Hastings and Gourdoze explained that inmates who are confined in a "high security" prison, like USP-Big Sandy, have a history of violence, which is a factor for placing them in such facilities. They both stated that despite that fact, a prison could not stay in a permanent state of "lockdown."

<u>Legal Requirements of "Failure to Protect" Claim</u>

Based on those Declarations, the defendants assert that Browning has failed to satisfy the applicable two-pronged test for asserting a failure-to-protect claim. The test is set forth in two cases: the first, a decision rendered in this Court, *William v. Halbert*, 2008 WL 2397709, (E.D. Ky., June 11, 2008)(Senior Judge Karl S, Forester, presiding), and the second, an earlier Oregon case decided in 1999, *Savocchio v. Crabtree*, 1999 WL 562692 (D. Or. 1999) (Not reported in F. Supp. 2d).

*Savocchio* cited and relied on the Supreme court case of *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Under *Farmer*, and hence under *Savocchio*, the first prong of a failure to protect claim requires a prisoner to satisfy an objective standard which is based upon more than his subjective fear. To prevail, a prisoner must first demonstrate that he has been incarcerated under conditions posing a risk of serious harm. *Farmer*, 511 U.S. at 834.

Second, a prisoner must prove that prison officials were deliberately indifferent to his health or safety. *Id*. Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official

8

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

If the plaintiff's fears are not justified or if the prison officials' actions are reasonable, he has no Eighth Amendment claim. Prison officials avoid liability if "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent. *Id* at 844."A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' " not absolute safety. *Farmer*, *Id*. (citing *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L. Ed.2d 22 (1993) *Id*. at *5).

The defendants also argue that their lack of medical training and involvement in rendering medical care precludes claims against them for allegedly deficient medical treatment.

## C. Qualified Immunity

Citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), and other cases, the defendants argue that they are entitled to qualified immunity.  In *Harlow v*. Fitzgerald, 457 U.S. 800, 818  (1982), the Supreme Court held that federal officials, who perform discretionary functions, are entitled to qualified immunity from suit for violations of constitutional rights when their conduct does not violate clearly established law of which a reasonable person would have known.

## D. Summary Judgment Standard Not Met

The defendants argue that under case law applicable to Fed. R. Civ. P. 56, Browning has not produced evidence to support his case. The government argues that Browning is not entitled to rely solely upon affidavits and pleadings, but must instead make a more substantial showing in order to defeat a motion for summary judgment. The government alleges that Browning has

failed to meet that obligation.

E. Browning's Response to the Defendants'
Motion to Dismiss [Record Nos. 38 and 39]

In his Response to the defendants' "Motion to Dismiss", Browning generally re-asserted that before the assault, he had warned USP-Big Sandy staff that he was facing imminent danger from the Assailant Inmate. Browning referred to the murders of two inmates just prior to December 11, 2006, noting that the murdered inmates had been transferred from the District of Columbia ("D.C."). He claims that the defendants should have anticipated that the Assailant Inmate, who had also been transferred from D.C., would harm him. He stated as follows:

> "Therefore, [the Assailant Inmate] had arrange {sic} to meet and kill someone, because of the death of a homeboy. He was move {sic} into the cell with Plaintiff when there were other open cells with inmates being from D.C."

[Record Nos. 38 and 39, p.2].

Browning again stated that all of the defendants ignored his warning and pleas for separation and assistance. He argued that video-tape from prison cameras in operation on December 11, 2006 would reveal his ten minute conversation with B-3 Dorm Officer, just before the Assailant Inmate assaulted him [*Id*.]. Browning claimed that the video tape would substantiate his allegation that the B-3 Officer placed a phone call to Lt. Pennington for direction on how to proceed, and that Lt. Pennington returned the call to the B-3 Officer. Browning further claimed that the video-tape would show him leaving his cell after being attacked and reporting the assault to the B-3 Officer [*Id*.]

In his response, Browning raised other issues. He demanded the disclosure of the name of the staff officer who worked on the B-3 Dorm on December 11, 2006 and objected to a

10

Magistrate Judge ruling on the defendants' "Motion to Dismiss." Browning sought reconsideration of the dismissal of his FTCA claims due to his failure to name United States as a defendant. Emphasizing his *pro se* status and limited knowledge of the law, he stated that both the Court and Assistant United States Attorney knew that he was trying to assert an FTCA claim. He argues that the Court should have ignored his failure to name the United States as a party instead of dismissing the FTCA claim without prejudice.

### F. Browning's Motions and the Defendants' Response

Following Magistrate Judge Wier's denial of his the motion to compel the turnover of the prison video-tapes from December 11, 2006, Browning filed a motion seeking various forms of relief [Record No. 41, 3/20/09].

First, he asked to appeal Magistrate Wier's Order of March 6, 2009 [*Id*.]. Browning alleged that with regard to criminal activity, BOP Program Statement 1240.05 requires the BOP to maintain video-tapes for four years "or until the tape is no longer needed for the Special Investigative Supervisor's investigation or for operational purposes . . ." [*Id*., p.2]. Based on that language, Browning claimed that Special Investigative Agent Link had provided false information to the Court.

Second, Browning requested the Court to issue a preliminary injunction ordering the defendants to show cause why the December 11, 2006 video-tapes were not maintained for four years. [*Id*., pp.2-3]. Browning again argued that the video-tape would substantiate his claim that he gave prior warning of an impending attack to the prison officials.

Third, he asked for the named of the prison staff member who was working in the B-3

11

dorm on December 11, 2006 [*Id*.]. Fourth, he sought the appointment of counsel [*Id*]. Fifth, Browning argued that the defendants are in default for failure to answer the Complaint within 90 days of October 8, 2008. Browning apparently interprets that the defendants were actually served on October 8, 2009. For that reason, he seeks a default judgment [Id., p. 4].

In his other motion of March 20, 2009, Browning asked the Court to allow him to add the United States as a defendant to the FTCA claims, again relying on his limitations as a *pro se* litigant [Record No. 42]. He also complained that the defendants had been unable to identify the B-3 officer(s) on duty on December 11, 2006 [*Id*.].

On March 31, 2009, the defendants filed a Response [Record No. 43]. They advised that Senior Officer Specialist James Cantrell and Senior Officer Specialist James Meade alternated and divided B-3 Unit Officer duties on December 11, 2006. On April 17, 2009, Browning filed a motion seeking leave of Court to amend his complaint to add Senior Officer Specialist James Meade as a defendant [Record No. 44].

DISCUSSION
1. <u>Preliminary Motions [Record Nos. 41 and 42]</u>

Before considering the merits of the defendants' "Motion to Dismiss" the Court will address Browning's other preliminary motions.

A. <u>Motion for Default Judgment</u>

None of the defendants are in "default." In early December of 2008, the United States Marshal Office filed <u>Unexecuted</u> Returns of Service regarding Defendants Hastings, Gourdoze, and Edwards [Record Nos. 24-26]. These defendants could not be located in this district, which is verified by their subsequently filed Declarations explaining that they are no longer employed

12

by the BOP *in the Eastern District of Kentucky*.

Defendant Pennington was not served with process until **December 11, 2008** [Record No. 27]. Defendants Batts and Fazenbaker were not served with process until **January 9, 2009** [Record Nos. 30 and 31]. Even though these three defendants were never served with process, the United States Attorney's Office filed a timely "Motion to Dismiss" on February 9, 2009, on behalf of **all** of the named defendants [Record No. 34].

Fed. R. Civ. P. 12 (a) (2) provides that federal defendants have sixty days from the date of service of process in which to file an answer or responsive pleading. The time for response is **not** calculated from the date on which summonses were issued, which was October 8, 2008. Browning's motion for entry of default judgment will be denied.

B. Motion to "Appeal" or "Object to" March 6, 2009 Order

Browning's motion to "appeal" Magistrate Judge Wier's Order of March 6, 2009, will be denied as moot. First, the March 6, 2009 Order was not a "Report and Recommendation" to which an appeal or "objections" are filed, as is the case with dispositive rulings recommended by a Magistrate Judge. This was only an interlocutory discovery matter. Browning is advised that an appeal of an interlocutory issue is only permitted after the entry of a final judgment.

Second, the Court has reviewed the parties' pleadings on the issue of the video-tape, and determines that Magistrate Judge Wier's Order was proper and justified under the facts of this case and the law cited in the March 6, 2009 Order. First, as the Magistrate Judge noted, A party cannot produce what it does not have in its possession.

Third, the Court does not have the benefit of the BOP Program Statement 1240.05, to

13

which Browning referred [Record No. 41, p.2]. Even assuming Program Statement 1240.05 says what Browning says it says, his argument fails.

The federal authorities (the BOP and/or the FBI) determined that they were not going to pursue criminal charges against the Assailant Inmate.  The Program Statement states that retention of a video tape is required **only** with respect to a criminal matter. While Browning may perceive his assault as a criminal matter, and while he attempted to persuade the BOP to initiate criminal charges, the federal officials denied that request. The decision to initiate criminal charges is left to the discretion of federal or state prosecutors.  *Sahagian v. Dickey*, 646 F. Supp. 1502 (W.D. Wis. 1986).

 Thus, there is nothing irregular or suspect about the fact that the BOP did not retain the video-tape at issue until December 11, 2010.  No "criminal investigation" existed. Furthermore, Browning did not file this action until May 8, 2008, almost a year after the administrative exhaustion process had concluded on July 30, 3007 [Record No. 7-3]. The Court will deny Browning's motion to appeal Magistrate Judge Weir's March 6, 2009 Order, and his motion for a preliminary injunction regarding the prison video-tape from December 11, 2006.

## C. Motion for Appointment of Counsel

As the Court has twice explained, Browning is not entitled to the appointment of counsel in this civil matter. Both Congress and the Courts have drawn the line: "there is no constitutional right to legal representation in a civil case." *Southern Christian Leadership Conference, Louisiana Chapter v. Supreme Court of State of Louisiana*, 61 F. Supp.2d 499, 507 (E. D. La.1999); *see Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir.1999) (Denial of inmates' motion

for appointment of counsel in 42 U.S.C. § 1983 prison conditions action was not abuse of discretion, given that the core facts of the case were not in dispute, the legal claims were straightforward, and therefore no exceptional circumstances existed which would require appointment of counsel); 28 U.S.C. § 1915(e)(1).

D. Motion for Disclosure of Name

The defendants have provided the name of the officer on duty in Dorm B-3 on December 11, 2006. Accordingly, Browning's motion for disclosure is moot.

E. Motion to File Amended Complaint [Record No. 44]

Browning asks to add James Meade as a defendant to this action. Browning only learned that James Meade was  B-3 Unit Officer at USP-Big Sandy on December 10-11, 2006 after the United States provided that information in a filing dated March 31, 2009 [Record No. 43]. Browning did not attach an Amended Complaint to his motion. The motion is denied without prejudice to Browning re-filing his motion and attaching an Amended Complaint to it.

2. Objections to Dismissal of FTCA claim [Record No. 41] and
Motion to Add United States as Defendant [Record No. 42]

The Court will not set aside, alter, amend or reconsider the part of the October 8, 2008 Order which dismissed Browning's  FTCA claims.  Likewise, it will not add the United States as a defendant in order to rehabilitate Browning's dismissed FTCA claims. As noted in the October 8, 2008 Order,  the case law is well established that failure to name the United States as a party to an FTCA action results in a fatal lack of jurisdiction. *Allgeier v. United States*, 909 F.2d  869, 871 (6th Cir. 1990).

Even affording Browning consideration as a *pro se* litigant and ordering the joinder of

the United States as a defendant would not salvage his FTCA claim. It suffers from a fatal defect

on the merits. In his FTCA claim, dated September 14, 2007, Browning stated as follows:

> _____ "**Indicated recklessness in criminal-law sense that shows requiring actual knowledge of impending harm** that could have been easily preventable. This was **deliberately indifferent** to my safety in policy allowing substantial risk fo harm when public officials were aware that risk was obvious. . . .Officials **indifferent** to alleged threaten {sic} physical safety because I presented evidence of strong likelihood {sic} that violence would occur and officials ignored reasonable request for protection. I requested to be locked and counted in activite {sic} room.

[Record No. 7-3, p.4, ¶ 8 (Emphasis Added)].

Browning claims that the defendants: (1) engaged in activity akin to criminal conduct and

(2) deliberately disregarded a known threat to his personal safety. Clearly, he describes

intentional and deliberate violation of the Eighth Amendment to the United States Constitution,

which prohibits cruel and unusual punishment. Browning did not assert a claim of *negligence*

actionable under the FTCA.

In the prison context, the Eighth Amendment imposes a duty on prison officials to take

reasonable measures to guarantee the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825,

847, 114 S. Ct. 1970 (1994). "Deliberate indifference of a constitutional magnitude may occur

when prison guards fail to protect one inmate from an attack by another." *Walker v. Norris*, 917

F.2d 1449, 1453 (6th Cir. 1990).

For purposes of this discussion, the Court will assume that Browning's claims alleging

intentional deprivation of his Eighth Amendment constitutional rights are true.[7] The case law

---

[7] If true, the United States would not certify that any such intentional actions or violations of the constitution, by prison officials, fell within the scope of their employment.

16

establishes that claims which allege constitutional torts cannot be brought under the FTCA. *Washington v. Drug Enforcement Admin*, 183 F.3d 868 (8 th Cir. 1999) 183 F.3d, 868, 873 (citations omitted).[8] Citing prior cases, *Washington* discusses that while victims of purposeful wrongdoing committed by federal officials can bring certain intentional tort claims under the FTCA, they can only assert *constitutional* tort claims under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999 (1971). *See* 28 U.S.C. § 1346.

*Bivens* created a private right of action for damages against officials, acting under color federal law, who are alleged to have violated a citizen's constitutional rights. *Bivens*, 403 U.S. 388; *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66, 122 S.Ct. 515, 519 (2001). *Bivens* involved Fourth Amendment rights, but its principle was extended to the Eighth Amendment in *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468 (1998).[9]

---

[8] The Eighth Circuit gives teeth to the argument that even under the framework of *Carlson v. Green*, claims alleging constitutional violations can only be asserted under *Bivens*, not the FTCA.

"In fact, this conclusion is actually supported by the text of the 1974 amendment [to the FTCA]. Congress included an exclusion for intentional torts such as assault, battery, and abuse of process in the original version of the act. *See* Federal Tort Claims Act § 421 (1946). However, in 1974 Congress amended this section to provide that "investigative or law enforcement officers" can be held liable for "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h). The amendment abrogated the government's sovereign immunity under the FTCA only with respect to those enumerated torts, not constitutional ones. *See id.*; *see also Primeaux v. United States*, 181 F.3d 876, 884-85 (8th Cir.1999) (en banc) (Lay., J., dissenting). Therefore, constitutional tort claims are not cognizable under the FTCA."

*Washington*, 183 F.3d at 873 -874.

[9] The *Bivens* doctrine was extended to promote a right of action against individual prison officials when the only alternative was an FTCA claim against the United States, which the Supreme Court believed was insufficient to deter unconstitutional acts by individuals. *Carlson*, 446 U.S. at 14; *Correctional Services Corp.*, 534 U.S. at 67-68, 122 S.Ct. at 520.

In *Carlson*, the Supreme Court held that FTCA and *Bivens* actions are "complementary," rather than integrated causes of action. *See Carlson*, 446 U.S. at 20-21. In *Washington*, 183 F.3d at 873-74, the Eighth Circuit interpreted *Carlson* as meaning that a claimant is not permitted to bring a constitutional tort cause of action under the FTCA.

Browning has filed a *Bivens* action against the defendants. He has therefore pursued the proper remedy for redress of his claims alleging constitutional violations. Simply put, he cannot seek redress for these alleged violations under both *Bivens* and the FTCA. *See Carlson*, 446 U.S. at 20-21; *FDIC v. Meyer*, 510 U.S. 471, 487 (1994); *Washington*, 183 F.3d at 873-74; *Kennedy v. Mendez*, 2004 WL 2301917, * 5 (M.D. Pa., January 15, 2004) (Not Reported in F. Supp. 2d) (Because constitutional violations are not cognizable under the FTCA, Magistrate Judge recommended that the plaintiff's constitutional claims against the United States should be dismissed).

Finally on this issue, Browning used the term "negligent" in describing the acts of the prison officials [*See* Complaint, Record No. 7, p. 5]. He stated that the defendants "knowingly and recklessly" failed to take steps to protect him from known danger [*Id*., p.3]. Browning's reference to the term "negligence" or "negligent" is not, however, dispositive of his claims. The Sixth Circuit has made clear that "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states." *United States v. Louisville & Nashville R. Co.*, 221 F.2d 698, 701 (6th Cir.1955).

Browning's word do not support an FTCA claim. "Gross Negligence" implicates a constitutional tort under Fourth, Fifth or Eighth Amendments. *Farmer v. Brennan*, 114 S. Ct. 1970, 1978 (1994) explains that there is "little difference" between "gross negligence" and "recklessness as generally understood in the civil law." *Id*. at n. 4.

Sixth Circuit law also holds that a prison official's gross negligence or deliberate indifference to a prisoner's needs may constitute an Eighth Amendment violation. *See Sherfield*

18

*v. Matheny*, 820 F.2d 1225, *4 (6th Cir. (Tenn) June 22, 1987) (Table);  *Roberts v. City of Troy*,

773 F.2d 720, 724 (6th Cir. 1985) (citing *Stewart v. Love*, 696 F.2d 43, 44 (6th Cir. 1982) (prison

assault case)) (*Nishiyama v. Dickson County*, 814 F.2d 277, 282-83 (6th Cir. 1987) (en banc)

(grossly negligent or reckless supervision can form the basis for liability in a section

1983/fourteenth amendment action).[10]   For these reasons, Browning's "Motion to Add United

States as a Defendant" [Record No. 42] will be denied.

### 3. Defendants' Motion for Summary Judgment
### A. Standards for Dispositive Motions

Federal Rule of Civil Procedure 12(b)(6) provides for a defendant to move for dismissal

for a plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).   A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is

no law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face

of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day & Night Mfg. Corp.*,

576 F.2d 697 (6th Cir. 1978)); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976).

The plain language of the rule requires that if the Rule 12(b)(6) motion has attachments

which the Court considers, such as the declarations herein, then the motion "shall" be converted

into a motion for summary judgment pursuant to Rule 56.  *See Song v. City of Elyria, Ohio*, 985

F.2d 840, 842 (6th Cir. 1993).   As the Court has considered the sworn Declarations submitted

by five of the defendants, it must also examine the standards for summary judgment.

---

[10] *See also Joseph v. Brierton*, 739 F.2d 1244, 1249-50 (7th Cir.1984) (equating 'deliberate indifference' with 'willful neglect'); *Little v. Walker*, 552 F.2d 193, 197 n. 8 (7th Cir.1977), *cert. denied*, 435 U.S. 932 (1978); *Redmond v. Baxley*, 475 F. Supp. 1111, 1118 (E. D. Mich.1979) (noting that "deliberate indifference may involve taking risks, rather than intending results," and citing approvingly other district court opinions equating deliberate indifference with wantonness, recklessness, or gross negligence).

Summary judgment should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25. After the moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23. With these standards in mind, the Court turns its attention to the "Motion for Summary Judgment."

20

## B. Application of Standards to Eighth Amendment Claims

The Eighth Amendment prohibits prisons from inflicting cruel and unusual punishment on prisoners. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994) (citations omitted). The Eighth Amendment does, however, impose a duty on prison officials to protect prisoners from violence at the hands of other prisoners. *Id*. at 833.

The case of *Savocchio v. Crabtree*, 1999 WL 562692 (D. Or.1999) provides a good synopsis of Eighth Amendment claims of this type.  That court stated as follows:

> To prevail on an Eighth Amendment failure-to-protect claim, an inmate must satisfy both an objective and a subjective requirement. First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." [*Farmer*, 511 U.S. at 834, 114 S.Ct. at ----] The Supreme Court specifically left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id, n3.
>
> And second, the prison officials must have acted with deliberate indifference to prisoner health or safety. *Id* at 834. "Deliberate indifference" is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837....
>
> However, prison officials avoid liability if "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844. "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' " not absolute safety. *Farmer*, 511 U.S. at 844, citing *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L. Ed.2d 22 ... (1993)."
>
> *Savocchio v. Crabtree*, 1999 WL 562692, at *5.

Applying these standards, the Court first considers if Browning has demonstrated that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S.

at 834. This is an objective standard which must be based upon more than his subjective fear. Second, Bates must prove that the BOP acted with deliberate indifference to his health or safety. If Browning's fears were not justified or if the defendants' actions were reasonable, he has not asserted a valid Eighth Amendment claim.

### C. Eighth Amendment Claims Against Defendants Hastings and Gourdoze

The Court will dismiss the Eighth Amendment claims against Defendants Hastings and Gourdoze, both as to alleged "failure to protect" and inadequate medical treatment.

The case of *Shehee v. Luttrell*, 199 F.3d 295, 300 (1999), holds that officials whose only action involve[s] the denial of administrative grievances, or the failure to act, are not liable under §1983.[11]  "Liability under § 1983 must be based on more than *respondeat superior*, or the right to control employees.  It must be based on active constitutional behavior, not a "mere failure to act."  *Id*., quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999).

In order to find supervisors liable, a plaintiff must allege that the supervisor condoned, encouraged or participated in the alleged misconduct.  *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241 (6th Cir. 1989), *cert. denied*, 110 S. Ct. 2173 (1990).  A plaintiff must show "'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'"  *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

---

[11] *Bivens* is the judicially-created corollary to a 42 U.S.C. § 1983 claim. Under *Bivens*, a citizen may sue individual federal agents if he or she "suffer[ed] a compensable injury to a constitutionally protected interest." *Butz v. Economou*, 438 U.S. 478, 486, 98 S.Ct. 2894, 57 L. Ed.2d 895 (1978); *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L. Ed.2d 619 (1971).

First, Browning does not allege that he personally warned either of these defendants of the threats made by the Assailant Inmate and his resulting fear for his safety. Browning's Eighth Amendment "failure to protect" claims against these defendants is based solely on the theory of *respondeat superior*. Given that fact, his "failure to protect" claims fail.

Second, neither Hastings nor Gourdoze were physicians who were qualified to render medical treatment. Browning offers nothing to refute that conclusion. For that reason, any medical claims against them would not be meritorious, given their lack of involvement in treating Browning's injuries. *See Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841, 2003 WL 22025373, at *2 (6th Cir. (Mich.) 2003) (" Furthermore, defendants DeBruyn, King, and Naylor were involved solely by virtue of their denial of Alder's grievances. The mere denial of a prisoner's grievance states no claim of constitutional dimension."); *Martin v. Harvey*, 2001 WL 669983, *2, 14 Fed. Appx. 307 (6th Cir. June 7, 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Simpson v. Overton*, 79 Fed. Appx. 117, 120, 2003 WL 22435653, 2 (6th Cir. (Mich.).) ("Second, Simpson's allegations concerning the other two defendants boil down to their roles in denying his administrative appeals. But the denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation. . . . "); *Harris v. Lappin*, 2008 WL 4371503, 6 (N. D. W. Va., 2008) ("To the extent the plaintiff may be asserting that defendants Lappin, White, Haynes or Boyle were deliberately indifferent to his serious medical needs by denying his institutional grievances, that claim is also without merit as this is not the type of personal involvement required to state a *Bivens* claim.").

23

All of Browning's Eighth Amendment claims against these defendants are based only on the doctrine of *respondeat superior*. As that doctrine is not available to impose liability in the context of a *Bivens* action, there is no set of facts which under which Browning could prevail as a matter of law on these claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at 251-253. Dismissal with prejudice, of the plaintiff's Eighth Amendment claims against Defendants Hastings and Gourdoze, both as to "failure to protect" and medical claims, is warranted.

### D. Eighth Amendment Claims Against Defendants Batts, Fazenbaker, Pennington and Edwards

Browning alleges that these defendants failed to heed his express warnings about being attacked by the Assailant Inmate. He claims that the defendants further failed to take steps to ensure that the Assailant Inmate did not have access to a dangerous tool. Five of the defendants allege in their sworn Declarations that they were aware of no facts or circumstances (either formally or informally) which would have put them on notice of Browning's belief that he faced potential harm from the Assailant Inmate.

The defendants assert that they had no reason to suspect any animosity between Browning and the inmate who assaulted him. They claim that if there was a dispute between the two inmates, Browning failed to adequately explain the problem in terms that would have prompted them to respond in a quick and remedial manner. Claiming ignorance of the alleged problems between Browning and the other inmate, they contend that they had no reason to take preventative measures to separate the two inmates.

The defendants point to Browning's Complaint, in which he stated that he asked Defendant Fazenbaker to separate him from the Assailant Inmate *only* because he feared some

undefined violence.  They claim that even if Browning made that statement, it would have been too ambiguous to cause Fazenbaker to take emergency steps to separate the two inmates.

They take the same stance regarding Defendant Batts.  They argue that in the Complaint, Browning alleged that he approached Batts during the lunch meal, told Batts that another inmate was moving into his cell and that he had to be moved or there would be a problem.  The defendants argue that this ambiguous statement did not convey an emergency.

The defendants also claim that Browning failed to take overt action to cause a separation from the Assailant Inmate, such as directly reporting to the Lieutenant's Office for protection or requesting Protective Custody [Record No. 34-2, p. 7]. They note that while Browning objected to sharing a cell with the other inmate, he did not object to remaining in the same housing unit with him.

Finally, the defendants assigned no credence to Browning's statement that Officer Edwards called Lt. Pennington to convey Browning's concerns. They claim that in his Complaint, Browning alleged that he requested placement into an "activity room," not Protective Custody. They claim that he did *not* mention a likely assault at the hands of the Assailant Inmate. The defendants argue that seeking placement in the "activity room" would not have notified any of them of an emergency situation or the need to officially separate the two inmates.

While not denying Browning's claims outright, Defendants Batts, Fazenbaker and Pennington state that they have no specific memory of Browning warning about the Assailant Inmate. They claim, however, that if Browning did try to warn him of danger at the hands of the Assailant Inmate, he did not do an adequate job of explaining just how dangerous of a situation

25

he was facing. They claim that his statements were too vague or ambiguous to cause action.

The Court disagrees.  In addition to Browning's own allegation, Browning attached to his Complaint a document dated November 29, 2006 from then-Warden Hastings, entitled "Memorandum for USP Big Sandy Inmate Population" [Record No. 7-3].

In that Memorandum, Warden Hastings stated that "As long as there continues to be information which leads me to believe problems between groups of inmates may result in injuries to either staff or inmates, the institution will remain on full lockdown status." [Record No. 7-3, p.1].[12]  This Memorandum clearly acknowledged "group problems" and clearly revealed the seriousness of the security situation at the prison at that time. The defendants do not dispute Browning's allegation that the murdered inmates originated from the District of Columbia or that the Assailant  Inmate had been transferred from the District of Columbia.

Browning alleged that between December 10-11, 2006, he directly and personally warned Defendants Batts and Fazenbaker that the Assailant Inmate was going to harm him.  He states that he observed Defendant Edwards having two phone conversations with Defendant Pennington about his fears and pleas help. All of this alleged activity would have occurred just two weeks after Warden Hastings issued the Memorandum following the murder of two inmates at USP-Big Sandy, whom Browning claims had been transferred from the District of Columbia.

Browning claims that because the Assailant Inmate had also been transferred from the District of Columbia, he was angry and seeking revenge on behalf of the murdered inmates.

---

[12] Although Hastings lifted  a few restrictions for showers, phone calls, laundry and some hot meals, the lift was limited. She emphasized that the lockdown was in full force and effect.

Browning further claimed that the Assailant Inmate had a history of violence about which the defendants should have been aware. Finally, he claims that the defendants should have prevented the Assailant Inmate from having access to a deadly weapon.

The record presents a genuine issue of material fact with respect to these four defendants under the Eighth Amendment analysis: first, as to whether Browning was incarcerated under conditions posing a substantial risk of serious harm, *Farmer*, 511 U.S. at 834, and second, whether these defendants were deliberately indifferent that substantial risk *Id*. at 837.

Absent additional discovery as to the Assailant Inmate's history at the prison, or other prisons, or other relevant development of the record, an issue of fact exists as to the "failure to protect" claims asserted against Defendants Batts, Fazenbaker, Pennington and Edwards. Summary dismissal of Browning's "failure-to protect" claims against these defendants would not be appropriate.  *See Curry v, Scott*, 249 F.3d 493, 507-09 (6th Cir. 2001) (an issue of fact existed as to whether defendants actually knew of a substantial risk of serious harm to prison inmates, precluding summary judgment on Eighth Amendment claim of deliberate indifference).

Just as the Court dismissed Browning Eighth Amendment medical claims against Defendants Hastings and Gourdoze, the Court will also dismiss Browning's Eighth Amendment *medical* claims against Defendants Batts, Fazenbaker, Pennington and Edwards. These defendants had no medical training and were not involved in Browning's  medical treatment.

Browning's Eighth Amendment "failure to protect" claims against Defendants Batts, Fazenbaker, Pennington and Edwards will be referred to Magistrate Judge Robert E. Wier for all further disposition.

<u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** as follows:

(1)     The "Motion to Dismiss or in the Alternative, Motion for Summary Judgment" [Record No. 34] is **GRANTED IN PART** and **DENIED IN PART** as follows:

       (A)     The "Motion to Dismiss" [Record No. 34] is **GRANTED** as to the Eighth Amendment "failure to protect" claims, and Eighth Amendment medical claims, which Plaintiff James F. Browning asserted against Defendants Suzanne Hastings and Bobby Gourdoze

       (B)     Plaintiff James H. Browning's claims against Defendants Suzanne Hastings and Bobby Gourdoze are **DISMISSED WITH PREJUDICE**. The Clerk is directed to note in the CM/ECF docket sheet that the claims against these defendants are "Terminated."

       (C)     The "Motion to Dismiss"[Record No. 34] is **DENIED** as to the Eighth Amendment "failure to protect"claims which Browning asserted against Defendants Myron Batts, Timothy Fazenbaker, Benjamin Pennington and Officer Edwards.

       (D)     The "Motion to Dismiss"[Record No. 34] is **GRANTED** as to the Eighth Amendment medical claims which Browning asserted against Defendants Myron Batts, Timothy Fazenbaker, Benjamin Pennington and Officer Edwards.

(2)     Plaintiff James Hollman Browning's "Motion to Appeal of Magistrate Judge Decision of March 6, 2009," [Record No. 41] construed as collective Rule 59(e) "Motion to Alter or Amend" Orders entered on (a) October 8, 2008; (b) October 24, 2008, and (c) March 6, 2009, is **DENIED**.

(3)     Plaintiff James H. Browning's "Motion to Add United States as Defendant"

28

[Record No. 42] is **DENIED**.

      (4)     Plaintiff James H. Browning's "Motion to For Leave to File an Amended Complaint (James Meade) is **DENIED WITHOUT PREJUDICE** to Browning re-filing the motion and attaching an Amended Complaint.

      (5)     This proceeding, 7:08-CV-88-KKC, is referred to Magistrate Judge J. Robert E. Wier pursuant to 28 U.S.C. § 636(b)(1)(A) for all further proceedings.

      (6)     This proceeding is no longer referred to the Pro Se Office. The Clerk of the Court is directed to make the proper administrative referral notation(s) in the CM/ECF docket sheet.

      Dated this 22nd day of June, 2009.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**

29