UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 08-CV-88-KKC

JAMES HOLMAN BROWNING, JR                                                      PLAINTIFF

VS:                                **OPINION AND ORDER**

BENJAMIN PENNINGTON, ET AL.                                                   DEFENDANTS

\* \* \* \* \* \*

This matter is before the Court on various motions filed by the Plaintiff, James Holman Browning, Jr., and the Motion to Dismiss or in the Alternative for Summary Judgment (DE 140) filed by the remaining Defendants in this action.

**I.     Background.**

Browning claims that various prison officials violated his right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. Browning is currently an inmate at United States Penitentiary ("USP") Tucson. He is serving a life sentence imposed by the United States District Court for the Middle District of North Carolina. At the time of the events relevant to this action, however, he was imprisoned at USP Big Sandy in Eastern Kentucky. There is no dispute that, on December 11, 2006, while Browning was imprisoned at Big Sandy, he was injured when his cellmate Deon Coates stabbed him with a homemade weapon.

The altercation occurred at approximately 4:00 p.m. during a routine "count down" during which prisoners are required to report back to their cells for a headcount. (DE 140 p.2.) The prison staff had assigned Coates to Browning's cell on December 9, 2006, just two days before the altercation. (DE 140, p. 3.) There does not appear to be any dispute that neither Browning nor Coates were in their cell, however, at the time of the stabbing.

As a result of prior opinions by the Court, there are now seven Defendants in this matter:

Benjamin Pennington, Tim Fazenbaker, Myron Batts, L. Turner, James Meade, L.T. Konkle and James Link, all of whom were employed at Big Sandy USP at the time of the incident and are sued in their individual capacities. The sole remaining claim against each of these Defendants is that the Defendant failed to protect Browning from a serious risk that he would be substantially harmed by another inmate. (DE 123, Opinion and Order).

These Defendants have moved to dismiss the claims against them or, alternatively, for summary judgment in their favor on their defense of qualified immunity. (DE 140.) After the Defendants moved to dismiss the claims against them, Browning moved to amend his complaint. (DE 173) and filed several other related motions (DE 185, 186, 190, 193, 194.)

**II. Motion to Dismiss or for Summary Judgment.**

**A. Motion to Dismiss.**

The Defendants argue that Browning's claims against them should be dismissed for two reasons. First, they assert that Browning has not sufficiently pleaded a failure-to-protect claim against them under the pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, they assert that they are entitled to qualified immunity.

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are

2

sufficient "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 and to "state a claim to relief that is plausible on its face." *Iqbal,* 550 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. On a motion to dismiss, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.

The Court must liberally construe a *pro se* plaintiff's complaint. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Nevertheless, the complaint is still subject to the *Twombly/Iqbal* standard. *Hill v. Lappin*, 630 F.3d 468, 470-01 (6th Cir. 2010).

As explained, the Plaintiff asserts a failure-to-protect claim against each of the seven remaining Defendants. (DE 102, Amended Complaint, CM-ECF pp. 4-5, 11.) Prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). For a claim based on a prison official's failure to prevent harm to a prisoner, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm and that the official was deliberately indifferent to the prisoner's health and safety. *Id*. at 834.

As to the definition of deliberate indifference, the Supreme Court has explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

3

*Id*. at 837.

"A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. Prison officials must exhibit more than mere negligence before an Eighth Amendment violation will be found. *Id*. at 835. It is not enough that the official "should" have perceived a significant risk, but did not. *Id*. at 838. Nevertheless, "an official's subjective awareness of a risk may be proved circumstantially by evidence suggesting that 'the defendant . . . had been exposed to information concerning the risk and thus 'must have known about it.'" *Ewolski v. City of Brunswick*, 287 F.3d 492, 513, n.7 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 842).

As to Defendant Tim Fazenbaker, Browning asserts in his Amended Complaint that Fazenbaker was the Unit Manager and Duty Officer at the time of the incident. Browning further asserts that, on December 10, 2006 – the day before the incident -- he asked Fazenbaker to separate him from Coates. Browning asserts he told Fazenbaker that he feared Coates would be violent towards him. Browning asserts that Fazenbaker told him he would "make the move before he left work on that day." (DE 102, Amended Complaint, CM-ECF p. 4.) There is no dispute that Browning was not moved from the cell that day.

Defendant Batts was the Associate Warden of USP Big Sandy at the time of the incident. In his Amended Complaint, Browning asserts that he approached Batts, at 10:50 a.m. on the day of the attack, during "mainline," or lunch, and "made the same request" he had made to Fazenbaker. (DE 102, Amended Complaint, CM-ECF p. 4.) The Court will assume this means that Browning told Batts the same information he told Fazenbaker. Browning further asserts that he told Batts that when

4

Coates "moved into my cell (which I had been in for 3 years), 'Coat[e]s' told me that I had to move, or there would be trouble for me." (DE 102, Amended Complaint, CM-ECF p. 4.) He may also allege that he told Fazenbaker the same thing.

Construing the Amended Complaint liberally, Browning has pleaded sufficient facts that allow a reasonable inference that Fazenbaker and Batts were aware of a substantial risk of serious harm to Browning and did nothing to abate the risk. He alleges that he told both of these officers that he feared that Coates would be violent towards him. He further alleges that the officers did nothing in response. Browning's success on these claims will depend upon the evidence that he is able to produce to support them but the Court finds that he has at least sufficiently pleaded a failure-to-protect claim against these Defendants.

As to Defendants L. Turner, James Link, James Meade, Benjamin Pennington, and Lt. J. Konkle, however, Browning does not assert any facts supporting his claim that they were aware that he faced a substantial risk of serious harm but did nothing. Browning asserts that these Defendants "failed to protect and separate me on December 11, 2006 at 3:50 p.m. before count time." (DE 102, Amended Complaint, CM-ECF p. 5.) However, this is merely a conclusory allegation. The Court cannot infer from this allegation that these five Defendants were aware of a substantial risk of harm to Browning but did nothing in response.

As to Defendants Turner and Meade, Browning asserts that these Defendants came out of their office and asked him to "come out" (DE 12, Amended Complaint, CM-ECF p. 6.) and that they made phone calls to Defendant Link to inquire what should be done about Browning's "concerns." (DE 102, Amended Complaint, CM-ECF p. 4.) These allegations cannot support an inference that Defendants Turner and Meade violated Browning's right to be free from cruel and unusual

5

punishment. He makes no allegations at all regarding what Meade or Turner knew let alone any allegations supporting an inference that they knew Browning faced a substantial risk of serious harm.

As to Defendants Link, Pennington, and Konkle, the Plaintiff alleges that it was one of these three Defendants who requested that Browning "lock down" in his cell with Coates. (DE 102, Amended Complaint, CM-ECF p. 5.) The problem, however, is that he does not assert any facts from which it could be inferred that these three Defendants were aware that Browning faced a substantial risk of serious harm before allegedly requesting that he go to his cell.

He asserts that Link, Pennington, and Konkle "were indifferent to my reports of my being threatened and my asking for protection, despite the fact that I presented evidence of a strong likelihood that violence towards me would occur, and they ignored my reasonable requests for protection." (DE 102, Amended Complaint, CM-ECF p. 2.) But, this allegation is conclusory. He does not state how the Defendants were presented any report or evidence or what that evidence was. Thus, the Court cannot infer that these Defendants were aware that Coates posed a substantial risk of serious harm.

Likewise, he asserts that these Defendants were "fully aware of my request for separation from 'Coats,' and fully aware of my reports of threats of physical violence towards me." (DE 102, Amended Complaint, CM-ECF p. 5.) Again, however, Browning does not assert any facts regarding what these reports were or how these Defendants became aware of them. In short, Browning asserts only conclusions but no facts from which a reasonable person could infer that these Defendants were aware of information before the stabbing that Browning faced a substantial risk of serious harm from Coates but still ordered him to lock down in his cell with Coates.

The Court has permitted Browning to amend his Complaint several times but Browning has

6

never asserted any allegations about these Defendants other than those detailed above. Accordingly, the Plaintiff's claims against L. Turner, James Link, James Meade, Benjamin Pennington, and Lt. Konkle should be dismissed for failure to state a claim. As will be discussed further below, however, Browning's claims against these Defendants should also be dismissed under the doctrine of qualified immunity.

### B. Qualified Immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It provides "an *immunity* from *suit* rather than a mere defense to liability." *Fettes v.* Hendershot, 375 F. App'x 528, 531 (6th Cir. 2010) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "It is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Id.* (quoting *Mitchell*, 472 U.S. at 526). Generally, qualified immunity "applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir.2009). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks and citation omitted).

"When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Austin v. Redford Tp. Police Dept.*, -- F.3d --, 2012 WL 3194227, at * 3 (6th Cir., Aug. 8, 2012) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

The Sixth Circuit varies in applying either a two-part or three-part test to determine whether

7

government entities are entitled to qualified immunity. Under the two-part approach, the Court looks at 1) whether the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred; and 2) whether the violation was of a right that is clearly established. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). Courts may address these prongs in the order that is most useful. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Under the three-part approach to the qualified-immunity analysis, the Sixth Circuit also asks "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Estate of Carter*, 408 F.3d at 310, n.2 (6th Cir 2005). The Sixth Circuit has determined that the three-part approach "may in some cases increase the clarity of the proper analysis" but that, "in many factual contexts. . . the fact that a right is 'clearly established' sufficiently implies that its violation is objectively unreasonable." *Id*.

The first question then is whether Browning has showed, viewing the facts most favorably to him, that any of the Defendants actually knew that Browning faced a substantial risk of serious harm from Coates and disregarded that risk by failing to take reasonable measures to abate it. This question "involves both a subjective and objective component. The objective component requires that the deprivation alleged must be 'sufficiently serious.'" *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer*, 511 U.S. at 834). To satisfy the subjective component, the plaintiff must show that the defendants had a "sufficiently culpable state of mind." *Id*. (quoting *Farmer*, 511 U.S. at 834). This means the plaintiff must show that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that he actually drew the inference. *Id*. (quoting *Farmers*, 511 U.S. at 837).

8

As to Defendants Fazenbaker and Batts, Browning alleges that he told both of these Defendants that he requested to be separated from Coates because he "feared that violence to me would occur from inmate Coat[e]s." He also asserts that he told, at least Batts, that Coates "told me that I had to move, or there would be trouble for me." In the case of Fazenbaker, these comments were made only one time and on the day before the assault. In the case of Batts, these comments were also made only one time and on the day of the assault. This is the only information that Browning alleges that he told Batts and Fazenbaker.

Browning does not assert that he told the officers that Coates had explicitly threatened to assault him or even that Coates had explicitly threatened violence. Instead, Browning alleges that he told Fazenbaker and Batts once that he *feared* Coates would be violent toward him. A prison official is not put on notice that an inmate faces a substantial risk of serious harm simply by being aware of an inmate's subjective "fear" of violence. The Defendants were allegedly aware that Coates made a single vague threat of "trouble" to Browning. But, "[t]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Varmado-El v. Martin*, 52 F. App'x 764, 766 (6th Cir. 2002) (quoting *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996)).

The question then is whether the Defendants were aware of some information, in addition to Coates' threat of "trouble," from which they could have inferred that Browning faced a substantial risk of serious harm. The Court will assume that both officers were aware of Deon Coates' record at USP Big Sandy. Coates arrived at Big Sandy approximately 11 months prior to the incident. During that time, in August 2006, Coates had one disciplinary action involving violence when another inmate attempted to stab Coates with a homemade weapon. (DE 140-17.) There is no indication in

9

the report of the incident, however, that Coates was the aggressor in that incident. Coates was placed in a Special Housing Unit for using threatening language toward a prison official in November 2006. At that time, a psychological review of Coates was conducted. The report concluded that Coates was of low threat to others and that he had no significant mental health problems. (DE 140-20.)

Like many inmates, Coates' history at Big Sandy was not unblemished but it does not support an inference that his threat of "trouble" meant a *substantial* risk of *serious* harm to Browning. A psychological review of Coates concluded that he was a low threat to other inmates. He did not have an extensive history of violent behavior towards other inmates or staff. Browning has made some reference to the assault being the result of gang activity but there is no evidence that either Browning or Coates were members of rival gangs. Nor is there any evidence that Browning was identified as someone particularly vulnerable to attack by other inmates for any reason.

Viewing the facts in Browning's favor, he has not carried his burden of showing that the Defendants Fazenbaker and Batts were aware of facts from which the inference could be drawn that Browning faced a substantial risk of serious harm from Coates. For this reason, Fazenbaker and Batts are entitled to qualified immunity.

It is also useful to view Browning's claim against Fazenbaker and Batts under the third prong of the Sixth Circuit's qualified immunity test. Under that prong, the Court looks at whether Browning has produced sufficient evidence to show that these Defendants acted objectively unreasonably in light of Browning's clear constitutional right to be free from cruel and unusual punishment. Browning alleges that he told Batts and, possibly, Fazenbaker one time on either the day before or day of the incident that Coates threatened "trouble" and that Browning told these Defendants he feared that meant Coates would be violent. Browning has not produced evidence that

10

Fazenbaker and Batts were aware of any other facts from which they could have inferred that Coates posed a substantial risk of serious harm to Browning. Thus, these Defendants did not act objectively unreasonably in failing to take measures to protect Browning on the same day or the day after Browning told them he feared Coates would be violent.

For all these reasons, the Motion for Summary Judgment by Fazenbaker and Batts on their defense of qualified immunity will be granted.

The Court has also considered whether the other Defendants –Benjamin Pennington, L. Turner, James Meade, L.T. Konkle and James Link -- are entitled to qualified immunity. In his response to the Defendants' Motion for Summary Judgment, Browning make very different allegations about these Defendants than he makes in his Complaint.

In his Complaint, Browning argues that certain of the Defendants had knowledge prior to the incident with Coates that Coates was violent and, thus, they should have done something to prevent the attack. In his response to the motion for summary judgment, Browning alleges that there were actually two attacks and seems to allege that certain of the Defendants' failure to protect him occurred between the two attacks.

In his response, Browning alleges that "a call was made" to Defendant Konkle and to Defendant Link but that Konkle "failed to order staff to immediately make a separation before the second attack." (DE 185, p. 4.) But, Browning provides no evidence that any such calls were made or of what information the calls conveyed.

He indicates that he ran into one of the Defendant's offices "out of air and with blood from Coates on his front clothing" and "requesting separation because of the incident." (DE 185, p. 6.) Browning alleges that he "was able to defend himself during the first attack and was able to run to

11

the Dorm Office to request separation before the second attack." (DE 185, p. 8.)

But, in his response to the Defendants' motion for summary judgment, Browning does not state which Defendants he ran to after the first attack. In a Motion to Amend later in the record (DE 173), Browning seems to indicate that it was Defendants Turner and Meade. (DE 173, p. 3; 173-5, Tendered Amended Complaint, CM-ECF p. 14.) He continues to allege in his latest tendered Amended Complaint that Meade and Turner asked him to "come out" of their office. (DE 173-5, Tendered Amended Complaint, CM-ECF p. 3.) The Court assumes this means that Turner and Mead asked Browning to exit their office. But, Browning does not make any allegations regarding how this alleged request led to Browning's injuries.

More importantly, he provides no evidence regarding what information these Defendants knew at the time they allegedly requested him to "come out." The Court will assume that Browning ran to their office after the first attack with blood on his clothes. He does not ever allege that he told Meade or Turner that Coates had attacked him. In fact he alleges in a pleading filed after the motion for summary judgment that the blood on his clothing "resulted from the injuries to Coates during the first attack." (DE 186, p. 2.) This makes clear that, at some point in the altercation, it was Browning who caused injuries to Coates.

Without any evidence regarding what information was conveyed to Turner and Meade at the time they asked Browning to exit their office, the Court cannot find that they knew he faced a substantial risk of serious harm. They may well have thought that Browning was the aggressor in whatever altercation he had been involved in, or that he had a weapon and that ordering him out of the office was necessary for safety. There is no evidence that Browning told these officers anything about the altercation with Coates when he ran into their office.

Further, looking at the third prong of the qualified immunity analysis, the Court cannot find that Turner or Meade acted objectively unreasonably. It is not unreasonable that they ordered an inmate with blood on him to exit their office when there is no evidence that they knew whether Browning was the aggressor, whether he had a weapon, or the extent of the violence within the prison.

In his response, Browning also indicates that certain of the Defendants were aware of "repeated violent danger between groups of inmates that violated plaintiff's constitutional rights" and that they were aware that inmates at Big Sandy had been killed. (DE 185, pp. 2, 6-7). A plaintiff may establish an Eighth Amendment claim with evidence that inmate attacks are "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Farmer*, 511 U.S. at 842-43. With such a claim, the plaintiff need not show that the prison officials knew of facts indicating that the plaintiff would be attacked by the specific prisoner who committed the assault. *Id.* at 843. But Browning has not asserted this type of claim nor has he submitted this type of evidence. Browning alleges in his Complaint that the officers were aware that inmate Coates posed a substantial risk of serious harm to Browning, not that the prison itself posed a substantial risk of serious harm.

As explained above, Browning does not allege that these five Defendants — Pennington, Turner, Link, Meade, and Konkle — were aware of any information about Coates or Browning from which they could have inferred that Browning faced a substantial risk of serious harm. Thus, he has not shown that these Defendants violated his clear constitutional right to be free from cruel and unusual punishment. Moreover, he has not produced any evidence that would indicate that these officers acted objectively unreasonably in failing to protect Browning in light of the information they

13

had prior to the assault. Thus, even if the Complaint could be construed to at least assert a claim against these five defendants, they are entitled to qualified immunity.

Finally, Browning alleges in his response that the Defendants destroyed certain photos and video footage. He appears to argue that the Court should make certain inferences against the Defendants because they allegedly destroyed this evidence.

Browning has raised the issue of the videotape many times in this litigation. His suspicions seem to be rooted in two affidavits filed by Defendant Link, who reviews and preserves surveillance footage taken within the prison when necessary. In his initial affidavit on the issue, Link stated the video footage was archived while the matter was under investigation but that, in accordance with the prison's ordinary course of business, the footage was released and recycled when the investigation was over. (DE 37-2). He later filed an amended affidavit stating that, upon further review, he had determined that no video data of the incident was saved at all. (DE 88-1.)

The Court has already determined in this action that Browning has not shown that the Defendants had any obligation to preserve the video data because he had not shown that they should have known at that time that litigation would follow the assault. (DE 109.) The only evidence in the record is that the failure to preserve the video data was in accordance with the prison's ordinary course of operations. As to the photographs, Browning does not put forth any evidence to support his claim that any photographs were destroyed.

Further, neither the alleged photographs nor the video footage would help Browning prove his claim that the Defendants knew he faced a substantial risk of serious harm but failed to protect him. The photographs are allegedly of the bloodied clothing that Browning wore on the day of the incident. (DE 185, Response, p. 11.) There is no dispute that an altercation occurred. Thus,

14

evidence that Browning's clothes were bloodied would not help him prove that the officers violated his constitutional rights.

As to the video footage, Browning alleges in a Motion to Amend filed his response to the Defendants' motion for summary judgment, that it would show him "running out of cell 318 during the first attack that occurred" and "pointing to be lock[ed] in the activity room." (DE 173, Motion to Amend at 3.) But the video footage would not shed any light on what Browning told the officers when he ran to them.

### III.     Motion to Amend the Complaint.

The deadline for filing motions to join additional parties and to amend the pleadings was December 16, 2011. (DE 150.)  Browning's motion to amend the pleadings currently under consideration did not come until April 9, 2012 – nearly two years after the filing deadline. With it he appears to seek to add five defendants – Warden H.A. Rios, Jr., Brian Feldt, Bobby Gourdouze, Thomas F. McLaughlin, and Denise Gottleib – and new claims that all of the Defendants conspired to obstruct justice in violation of 42 U.S.C. § 1985(2) and to fail to protect him in violation of 42 U.S.C. § 1985(3).  (DE 173-5.)

Browning argues the Court should nonetheless permit the amendment because 1) "there is no scheduling order deadline set in this case;" and 2) his amendments are based on facts unknown to him until he received certain discovery responses by the Defendants dated March 16, 2012.

Browning is incorrect.  There are scheduling deadlines in this action.  The discovery deadline was July 31, 2012 and the deadline for filing dispositive motions is September 14, 2012. (DE 172.) This matter is set for a pretrial conference on January 23, 2013 and for trial on February 11, 2013. (DE 150.)  In recognition that Browning is a *pro se* Plaintiff, the Court has been accommodating in

15

letting him amend his Complaint. The Court permitted Browning to add three new Defendants in November 2010 and permitted him to add yet another Defendant on March 17, 2011. (DE 101, 123.) But, at some point, the Complaint has to become final. This case is now four years old. The discovery deadline and dispositive motion deadlines have passed. Permitting Browning to again amend his Complaint would require reopening those deadlines and require both parties to incur more expense in discovery and filing dispositive motions. That would unduly prejudice the Defendants who have already had to endure amendments to the Complaint at a late stage in this litigation.

Further, Browning does not explain what information the Defendants' March 16, 2012 disclosures revealed to him that he did not know before regarding the photographs and video footage. As to the video footage, Browning has made allegations about it throughout this litigation.

Finally, Browning's tendered Amended Complaint does not sufficiently allege a conspiracy claim under Section 1985. "[C]onspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Pahssen v. Merrill Community School Dist.*, 668 F.3d 356 (6th Cir. 2012) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.1987)).

The Court has ruled in a prior opinion that the allegations contained in Browning's tendered Amended Complaint do not support a civil conspiracy to deprive Browning of his Eight Amendment rights. (DE 123.) The Court need not restate that opinion. In brief, the Court found that Browning had not asserted a civil conspiracy or any meeting of the mind among the Defendants regarding any wrongful conduct. With regard to Browning's allegations about the Defendants' conspiracy to destroy "key evidence," including, allegedly, the video footage, the Court determined that such allegations did not support a claim that the Defendants conspired to fail-to-protect him. (DE 123.)

Browning now seeks to add a conspiracy-to-obstruct-justice claim against some or all of the Defendants. It is clear that this claim is based on the alleged destruction of evidence but Browning does not assert any meeting of the minds. He provides no details regarding who destroyed the evidence, who ordered the evidence destroyed, or even which of the Defendants was in on the alleged conspiracy. He makes only vague and conclusory allegations that the Defendants collectively "withheld and/or destroyed evidence" (DE 173-5, Tendered Amended Complaint, CM-ECF p. 12.)

For all these reasons, the Court will deny Browning's Motion to Amend his Complaint (DE 173).

**IV. Conclusion.**

1) The Motion to Dismiss (DE 140) filed by the Defendants is GRANTED in part and DENIED in part. The motion is GRANTED as to Defendants L. Turner, James Link, James Meade, Benjamin Pennington, and Lt. J. Konkle and the motion is otherwise DENIED;

2) The Motion for Summary Judgment (DE 140) on the issue of Qualified Immunity is GRANTED as to all seven remaining Defendants: Defendants Tim Fazenbaker, Myron Batts, L. Turner, James Link, James Meade, Benjamin Pennington, and Lt. J. Konkle;

3) The Plaintiff's Motion to Amend his Complaint (DE 173) is DENIED;

4) All other pending motions (DE 185, 186, 190, 193, 194) are DENIED as moot;

5) The Plaintiff's claims against Defendants Tim Fazenbaker, Myron Batts, L. Turner, James Link, James Meade, Benjamin Pennington, and Lt. J. Konkle are hereby DISMISSED; and

6) This action is STRICKEN from the Court's active docket.

Dated this 12th day of September, 2012.



Signed By:
*Karen K. Caldwell*
United States District Judge